MINNET, JAMES F., Associate Judge.
On May 12, 1964, plaintiffs entered into a contract with the defendants to purchase a home. Purchasers in their on site examination found that 65 feet was insufficient front footage to enable them to maneuver their car and boat behind the house without the removal of a bar-b-que pit as well as some large oak trees. Consequently, they sought to purchase an additional 35 feet west for entrance and exit to the rear of the property. The original listing price was $16,900.00, but because of this additional 35 feet $1,200.00 was added to the basic contract price. The on site examination did reveal the existing roadway which had been used by the seller in the past and it was clear that this particular area was the additional footage about which the parties were talking when the contract price was increased from $16,900.00 to $18,100.00.
The original listing set forth a lot size on the south boundary of 65 feet, irregular in shape so that the actual lot size was 65' by 250' by 100' by 240'. The contract of sale set forth the legal description including the additional 35 feet as follows:

Legal Description in Contract

“Begin at the SW corner Lot 24 of a REplat of Lot 16, Block QB, Quail Pond Addition to Casselberry, Seminole County, Florida, as recorded in Plat Book 8, page 43 of the Public Records of Seminole County, Florid [sic], run Easterly along the Northerly right of way of Azalea Drive 65 feet thence Northeasterly to the NE corner of said Lot 24, thence West along the North line of said Lot 24 to the NW corner of said Lot 24, thence Southwesterly to a point on the North right of way of Azalea Drive and 35 feet Westerly of the SE corner of Lot 25 of said Replat of Lot 16, Block QB, Quail Pond Addition; Thence Easterly along the North right of way of Azalea Drive 35 feet to the point of beginning; also the west 35 feet of Lot 23 of the said Replat of Lot 16 Block QB as recorded in Plat Book 8, page 43 of the Public Records of Seminole County, Florida, being parts of Lots 23, 24, & 25.”
At the time of closing the deed description was described as follows:

Legal Description in Deed

“Begin at the Southwest corner of Lot 24 of A REPLAT OF LOT 16 BLOCK QB QUAIL POND ADDITION to Cas-selberry, Seminole County, Florida, as re *318 corded in Plat Book 8, page 43, of the Public Records of Seminole County, Florida, run Easterly along the Northerly right of way of Azalea Drive 30 feet, thence Northeasterly to the Northeast corner of said Lot 24, thence West along the North line of said Lot 24 to the Northwest corner of said Lot 24, THENCE Southwesterly to a point on the North right of way of Azalea Drive 35 feet Westerly of the Southeast Corner of Lot 25 of said Replat of Lot 16 Block QC Quail Pond Addition, thence Easterly along the North right of way of Azalea Drive 35 feet to the point of beginning. Being parts of lots 24 and 25 of A REPLAT OF LOT 16 BLOCK QB QUAIL POND ADDITION to Cas-selberry, Seminole County, Florida, as recorded in Plat Book 8, page 43 of the Public Records. TOGETHER WITH, from the Southwest corner of Lot 25 of a REPLAT OF LOT 16 BLOCK QB, QUAIL POND ADDITION TO CASSELBERRY, Seminole County, Florida as recorded in Plat Book 8 page 43 of the Public Records of Seminole County, Florida, run Easterly along the Northerly right of way line of Azalea Drive 130 feet to a point of beginning. Thence run Easterly along the Northerly right of way line of Azalea Drive 35 feet, thence run Northeasterly to a point 35 feet East of the Northeast corner of Lot 24, thence run West to the Northeast corner of Lot 24, thence run Southwesterly to a point on the North line of Azalea Drive zvhich is the Point of Beginning.” (Emphasis to show difference added.)
The foregoing “Deed Description” is different from the “Contract Description” because it conveys only 20 feet of the West 35 feet of Lot 23. The different description in the deed was made by the grantors without knowledge of the grantees, and at the time of closing was explained away as “routine” with no real explanation given nor were the grantees advised that the legal description of the land conveyed was different. After possession grantees used the property in the manner in which they thought they had purchased it, and it was not until September 21, 1965, that the grantees were advised that the land they were using was not part of the property conveyed. Trial court denied plaintiffs’ relief and thus we' have the present appeal.
Plaintiffs contend that the deed should have been reformed to comply with the contract as originally described. Defendants contend that the description in the deed conveyed 100 ■ feet frontage and this is what was intended by the original agreement consequently there was no mistake. While it is true that 100 feet frontage was conveyed, the southern boundary was not “the West 35 feet of Lot 23.” The 35 feet as additional frontage was sought so that purchasers could get their boat behind the house and to the rear of the lot without removing trees.
In review we observe that the seller while conveying 100 feet frontage in redescribing the conveyance did not, in fact, convey the West 35 feet of Lot 23. In Jacobs v. Parodi, 1905, 50 Fla. 541, 39 So. 833; Battey v. Battey, 1926, 92 Fla. 512, 109 So. 584; Shell Creek Land Co. v. Watson, 1931, 101 Fla. 172, 133 So. 621; and Goodstone v. Shamblen, Fla. App.1962, 141 So.2d 8, reformation, mistake and misdescription are discussed between the contract and the deed. These cases indicate that reformation is appropriate where there is clear error between the contract of purchase and the deed. The lower court erred, therefore, when it failed to reform the deed to comply with the contract.
The final judgment from which this appeal has been taken is reversed and the cause is remanded for appropriate proceedings consistent with this opinion.
CROSS, C. J., and REED, J., concur.